IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HOMELIFE COMMUNITIES OF
HENRY, INC.,

   Plaintiff,

    v.

THE CITY OF MCDONOUGH,
GEORGIA, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:05-CV-2085-TWT

<u>ORDER</u>

This is a civil rights action. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 33]. For the reasons set forth below, the Defendants' motion is GRANTED.

I. <u>BACKGROUND</u>

The Plaintiff, HomeLife Communities of Henry, Inc. ("HomeLife"), is a residential homebuilder. One of its current projects is in the Bristol Park Subdivision in McDonough, Georgia ("the City"). Due in part to HomeLife's marketing efforts in DeKalb County, the overwhelming majority of purchasers in Bristol Park are African-American. Over the past few years, HomeLife's representatives have

experienced difficulty in receiving building permits and certificates of occupancy ("COs") from the City for its homes in Bristol Park.

On August 11, 2005, the Plaintiff filed this lawsuit against the City, its Mayor, Richard Craig, and its Building Inspector, James Campbell, alleging that their actions violated HomeLife's Fourteenth Amendment rights to Equal Protection and Due Process. The Complaint alleges that these Defendants discriminated by applying the City's building code in the following ways: (1) Campbell arbitrarily required HomeLife to go above and beyond what the building code required in order to receive its COs, including in different instances (a) installing a second sewer clean out, metal joist hangers, rafter ties, and smoke detectors, (b) furnishing a professional opinion from a certified engineer confirming that its bay windows would not leak, (c) performing extra plumbing work, (d) building one homeowner a plant shelf, and (e) planting trees in excess of two caliper inches on some residential property (Verified Compl., ¶¶ 11(a-g)); (2) the City performed courtesy inspections for home buyers in order to tortiously interfere with the Plaintiff's contract relations, refused to provide advance notice of these inspections, and delivered inspection reports to homeowners without any citation to the relevant building code sections (Id., ¶¶ 11(h-j)); (3) Campbell refused to allow the Plaintiff to attend these inspections (Id., ¶ 11(k)); (4) the Defendants unreasonably delayed in taking action on the Plaintiff's permits (Id.,

¶ 11(l)); (5) Mayor Craig articulated a new policy of not issuing any new permits or COs until the Plaintiff satisfied existing homeowners by correcting alleged problems in homes that already had received their COs (Id., ¶ 11(m)); (6) the City immediately issued a CO to a white purchaser while allowing an African-American to spend several days in a hotel (Id., ¶ 11(n)); (7) on July 21, 2005, the Defendants issued a stop work order against the Plaintiff after torrential rains breached a silt fence, while failing to take similar action against other builders and developers who suffered the same effects (Id., ¶¶ 11(o, p)); (8) Campbell falsely stated that these other erosion control violations were not within the city limits and then refused to allow the Plaintiff to correct this failure (Id., ¶¶ 11(q, r); (9) the Defendants maintained this stop work order, thus preventing the Plaintiff from installing roofs and windows and causing damage to existing structures (Id., ¶ 11(s)); (10) Craig and Campbell ordered that the Plaintiff construct a privacy fence even though this interfered with the Plaintiff's erosion control plan and violated City ordinances (Id., ¶ 11(t)); (11) on August 5, 2005, Campbell used another stop work order as an excuse to prohibit the Plaintiff from completing items identified for completion, even though the City had previously authorized the Plaintiff to perform this work (Id., ¶ 11(u)); and (12) Campbell made false and derogatory comments about the quality of the Plaintiff's homes (Id., ¶ 11(v)).  The Defendants have moved for summary judgment on the Plaintiff's claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. DISCUSSION

### A. Procedural Due Process

The Plaintiff alleges that the Defendants, by refusing to perform final inspections or issue COs for homes that complied with all the City's building code requirements, have deprived it of a property interest without due process of law.[1] A

---

[1] A § 1983 claim for denial of procedural due process requires a plaintiff to show (1) the deprivation of a constitutionally protected property interest, (2) state action, and (3) a denial of adequate procedural protections. Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). The Court will presume without deciding that the Plaintiff can demonstrate a protected property interest in this case.

government entity has denied adequate procedural protection under § 1983 only when it "refuses to provide a process sufficient to remedy the procedural deprivation...." McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994). Thus, a violation does not become complete "unless and until the state refuses to provide due process." Id. at 1562 (quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

Here, the City Code provides that a building owner may appeal the decision of a building official. (Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. 4.) It is undisputed that the Plaintiff has failed to do so. The Plaintiff contends, however, that it was not required to pursue such an appeal because (1) it was an optional remedy and (2) this remedy was inadequate as a matter of law. (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 13.) That it was optional is not the point, however, as the Plaintiff can hardly claim that it has been denied due process where it fails to utilize the process provided for it. See Dotson v. Griesa, 398 F.3d 156, 161 n.2 (2d Cir. 2005) ("Although a plaintiff is generally not required to exhaust administrative remedies before bringing a § 1983 suit, this rule does not apply to procedural due process challenges if the plaintiff failed to avail himself of the very administrative procedures he attacks as inadequate.") (citation omitted); Kildare v. Saenz, 325 F.3d 1078, 1086 (9th Cir. 2003) ("Appellants have not been deprived of procedural due process until they have exhausted their administrative remedies, because only then can we determine whether Appellants

were deprived of adequate process."). Furthermore, to be adequate, a procedural remedy need not provide all the relief available under § 1983, but must "be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000). Here, the requisite process should be that which could overrule a decision by a City building official to deny the Plaintiff's request for a final inspection, CO or building permit. The City Code clearly provides such relief, and the Plaintiff's procedural due process claim thus fails.

### B. Substantive Due Process

The Defendants also move for summary judgment on the Plaintiff's substantive due process claim. The Plaintiff has failed to respond, indicating that it does not oppose this motion. L.R. 7.1(B). The Court deems this failure to be an abandonment of the claim. See City of Lawrenceville v. Ricoh Electronics, Inc., 370 F. Supp. 2d 1328, 1333 (N.D. Ga. 2005).

### C. Equal Protection

The Plaintiff also claims that the Defendants' actions constituted an equal protection violation. To bring a valid equal protection claim based on a facially neutral statute such as the City's building code, the Plaintiff must show (1) that it was

treated differently than similarly situated individuals, and (2) that the Defendants applied the facially neutral statute unequally for the purpose of discriminating against HomeLife. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006); Strickland v. Alderman, 74 F.3d 260, 264 (11th Cir. 1996). To qualify as similarly situated under the first part of this test, an individual must be "prima facie identical in all relevant respects." Campbell, 434 F.3d at 1314; Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002). Purze provides an appropriate comparison. There, the plaintiffs were attempting to have their property, located in the Village of Winthrop Harbor, approved for development of a new subdivision. Following several denials by the Village's Board due to violations of its subdivision code, the plaintiffs brought suit alleging that their equal protection rights had been violated. To show they had been treated differently than similarly situated individuals, they offered evidence of two subdivisions whose variances had been granted despite violations of the code. The Seventh Circuit found, however, several key distinctions between the plaintiffs' proposed subdivision and the other prior applications, including the nature of their requested variances, the time at which the property had been developed, and the topography of the land. Id. at 455. The court thus found that these other subdivisions were not similarly situated and rejected the plaintiffs' equal protection claim.

Here, despite its laundry list of complaints, the Plaintiff has produced no evidence to prove that these allegations constitute an equal protection violation. The Plaintiff's only evidence of a similarly situated builder arises from the testimony of Don Brock, the president of the Homelife's Atlanta Office, who stated that he "made cursory trips to other builders in the area" and observed that some of these same ordinances were not being enforced. (Brock Dep. at 28.) The Plaintiff specifically alleges only that D.R. Horton–the one builder's name provided by Brock–was allowed to continue working despite having the same erosion control problems for which HomeLife was issued a stop work order. The Plaintiff provides no testimony from a D.R. Horton representative, nor makes any attempt to show how these alleged erosion control violations were similar to HomeLife's.

The Plaintiff's only other evidence in support of its equal protection claim arises from its allegations regarding the courtesy inspections provided to the homeowners in Bristol Park. HomeLife points out that in the Defendants' Response to the Plaintiff's First Interrogatories, the Defendants stated that they had performed only one other courtesy inspection outside of Bristol Park. In that instance, the City did not withhold any permits or COs as a result of this inspection. (Defs.' Resp. to the Pl.'s First Interrogs., ¶¶ 1-2.) The Plaintiff alleges that this shows an equal protection violation because, according to HomeLife, the Defendants hung around Bristol Park

homeowners' meetings making derogatory comments until they were asked to perform these courtesy inspections. (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 19.) Curiously however, the testimony cited by the Plaintiff in support of this allegation shows that the Defendants were invited by homeowners to come and listen to some of the problems they were having with HomeLife's houses. (Campbell Dep. at 169.) To maintain an equal protection claim based on this testimony, the Plaintiff would need to show that when homeowners in a similarly situated subdivision invited the Defendants to attend a meeting and listen to their complaints, the Defendants failed or refused to do so. No such showing has been made.

The Court finds that the Plaintiff has failed to create a triable issue on its equal protection claim. Although there are a lot of factual disputes, there is no genuine issue of "material" fact. The Plaintiff's evidence shows little more than that some of the City's employees exhibited racial animus. According to one of his subordinates, James Campbell would sometimes refer to an African-American who came into the office as a "stupid nigger or dumb ass nigger." (Amy Brown Dep. at 19.) Loretta Boone, a City Code Enforcement Officer, testified that she was forced to share an office with a co-worker, John Elkins, who had previously described African-American men as "monkeys" and referred to a Brazil nut as a "nigger toe." (Boone Dep. at 16, 19; Elkins Dep. at 29-30.) Such statements by City Officials, although reprehensible,

alone are not enough to demonstrate an equal protection violation. Without any specific demonstration of a similarly situated homebuilder who was treated differently, the Plaintiff's claim fails to survive summary judgment.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment [Doc. 33] is GRANTED.

SO ORDERED, this 30 day of August, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge